## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC WILIM, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>MONDELĒZ GLOBAL LLC,<br><br>        Defendant. | Case No. 1:21-CV-6855<br><br>The Honorable Rebecca R. Pallmeyer |

## MEMORANDUM OF LAW IN SUPPORT OF MONDELĒZ GLOBAL LLC'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendant
Mondelēz Global LLC

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ALLEGATIONS OF THE COMPLAINT.............................................................. 3

ARGUMENT ...................................................................................................... 4

    I.    Plaintiff's Challenges to the "5g Whole Grain per 16g Serving" Claim Are Preempted Because the FDA Regulations Expressly Authorize MDLZ to Make That Claim. .................................................. 4

    II.   Plaintiff Has Not Plausibly Alleged That MDLZ's Labeling Is Misleading.................................................................................................. 6

          A.    The "whole grain" claims do not suggest that Honey Wheat Ritz Crackers are made primarily of whole grains or that they are a "good source" of fiber. ....................................................... 7

          B.    The use of the phrase "Honey Wheat" is not deceptive............................. 9

    III.   Plaintiff Has Not Stated a Plausible Breach-of-Warranty Claim........................ 11

    IV.   Plaintiff's Remaining Common-Law Claims Are Also Fatally Defective. .............................................................................................. 12

    V.    This Court Should Dismiss Plaintiff's Claim for Injunctive Relief.................... 14

CONCLUSION................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Int'l Adjustment Co. v. Galvin*,
　86 F.3d 1455 (7th Cir. 1996) ................................................11

*Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*,
　493 F.3d 841 (7th Cir. 2007) ................................................14

*Baldwin v. Star Sci., Inc.*,
　78 F. Supp. 3d 724 (N.D. Ill. 2015) ................................................12

*Benson v. Fannie May Confections Brands, Inc.*,
　No. 17-3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018) ................................................14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
　761 F.3d 732 (7th Cir. 2014) ................................................14

*Cheslow v. Ghirardelli Chocolate Co.*,
　445 F. Supp. 3d 8 (N.D. Cal. 2020) ................................................11

*Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc.*,
　24 F. Supp. 3d 750 (N.D. Ill. 2014) ................................................4

*Chiappetta v. Kellogg Sales Co.*,
　No. 21-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ................................................7

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
　No. 17-1875, 2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ................................................9

*Cleary v. Philip Morris Inc.*,
　656 F.3d 511 (7th Cir. 2011) ................................................14

*Coe v. Gen. Mills, Inc.*,
　No. 15-5112, 2016 WL 4208287 (N.D. Cal. Aug. 10, 2016) ................................................6

*Connick v. Suzuki Motor Co.*,
　675 N.E.2d 584 (Ill. 1996) ................................................13

*Davis v. Hain Celestial Grp., Inc.*,
　297 F. Supp. 3d 327 (E.D.N.Y. 2018) ................................................11

*Davis v. SPSS, Inc.*,
　385 F. Supp. 2d 697 (N.D. Ill. 2005) ................................................13

*Figy v. Frito-Lay N. Am., Inc.*,
    67 F. Supp. 3d 1075 (N.D. Cal. 2014) .................................................................9

*Floyd v. Pepperidge Farm, Inc.*,
    --- F. Supp. 3d ----, 2022 WL 203071 (S.D. Ill. 2022) ........................................8

*Freeman v. MAM USA Corp.*,
    528 F. Supp. 3d 849 (N.D. Ill. 2021) ................................................................15

*Gustavson v. Wrigley Sales Co.*,
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ..............................................................5

*Harris v. Topco Assocs., LLC*,
    538 F. Supp. 3d 826 (N.D. Ill. 2021) ................................................................4

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
    607 N.E.2d 165 (Ill. 1992) .................................................................................7

*Holve v. McCormick & Co.*,
    334 F. Supp. 3d 535 (W.D.N.Y. 2018) .............................................................15

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ...............................................................6, 7

*Kennedy v. Mondelēz Global LLC*,
    No. 19-302, 2020 WL 4006197 (E.D.N.Y. July 10, 2020).................................10

*Lima v. Post Consumer Brands, LLC*,
    No. 18-12100, 2019 WL 3802885 (D. Mass. Aug. 13, 2019) ..............................10

*Manley v. Hain Celestial Grp., Inc.*,
    417 F. Supp. 3d 1114 (N.D. Ill. 2019) .........................................................12, 13

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018).................................................................................8

*McMorrow v. Mondelēz Int'l, Inc.*,
    No. 17-2327, 2018 WL 5024840 (S.D. Cal. Oct. 17, 2018) .................................6

*McNair v. Synapse Grp, Inc.*,
    672 F.3d 213 (3d Cir. 2012)..............................................................................15

*Mednick v. Precor, Inc.*,
    No. 14-3624, 2016 WL 5390955 (N.D. Ill. Sept. 27, 2016)..........................14, 15

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
    435 N.E.2d 443 (Ill. 1982) ...........................................................................12, 13

*N. Ins. Co. of N.Y. v. Silverton Marine Corp.*,
No. 10-345, 2010 WL 2574225 (N.D. Ill. June 23, 2010) ...................................................... 12

*Nacarino v. Kashi Co.*,
--- F. Supp. 3d ----, 2022 WL 390815 (N.D. Cal. 2022) ........................................................ 5

*Ollivier v. Alden*,
634 N.E.2d 418 (Ill. Ct. App. 1994) ..................................................................................... 13

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002) ................................................................................................ 15

*Red v. Kraft Foods, Inc.*,
754 F. Supp. 2d 1137 (C.D. Cal. 2010) ................................................................................. 5

*Red v. Kraft Foods, Inc.*,
No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ................................................... 9

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*,
155 F. Supp. 3d 772 (N.D. Ill. 2016) ................................................................................... 12

*Scheisser v. Ford Motor Co.*,
No. 16-730, 2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) ..................................................... 12

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ................................................................................................................ 15

*Solak v. Hain Celestial Grp., Inc.*,
No. 17-704, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) .................................................... 9

*Spector v. Mondelēz Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ............................................................................. 7, 11

*Steele v. Wegmans Food Mkts.*,
472 F. Supp. 3d 47 (S.D.N.Y. 2020) ............................................................................... 9, 10

*Stemm v. Tootsie Roll Indus., Inc.*,
374 F. Supp. 3d 734 (N.D. Ill. 2019) .................................................................................... 6

*Trujillo v. Apple Computer, Inc.*,
581 F. Supp. 2d 935 (N.D. Ill. 2008) .................................................................................... 7

*Turek v. Gen. Mills, Inc.*,
662 F.3d 423 (7th Cir. 2011) ................................................................................................. 5

*Warren v. Stop & Shop Supermarket, LLC*,
No, 20-8718, 2022 WL 815300 (S.D.N.Y. Mar. 16, 2022) .................................................... 10

*Warth v. Seldin*,
    422 U.S. 490 (1975) .................................................................................................. 15

*Zahora v. Orgain LLC*,
    No. 21-705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ........................................ 10

**Statutes**

Illinois Consumer Fraud & Deceptive Business Practices Act,
    815 ILCS 505/1, *et seq.* ............................................................................................. 3

Magnuson-Moss Warranty Act,
    15 U.S.C. § 2301, *et seq.* ...................................................................................... 4, 12

21 U.S.C. § 343-1(a) .......................................................................................................... 4

**Other Authorities**

21 C.F.R. § 100.1(c)(4) ...................................................................................................... 4

21 C.F.R. § 101.13 ............................................................................................................. 1

21 C.F.R. § 101.13(i)(3) ..................................................................................................... 5

21 C.F.R. § 101.54 ............................................................................................................. 6

## <u>INTRODUCTION</u>

Mondelēz Global LLC ("MDLZ") manufactures Ritz Crackers, which come in the signature Original flavor and many others. Those varieties include Honey Wheat Ritz Crackers, which contain whole grain wheat flour and have a sweeter, more wheat-forward taste than the Original variety. To highlight the presence of whole grains in these crackers, MDLZ truthfully states on their labeling that they contain "5g Whole Grain per 16g Serving." But Plaintiff claims that this statement—as well as several other representations on the labeling—exaggerates the amount of whole grains and fiber in the product. His claims are both preempted and implausible.

At the outset, the FDA's food labeling regulations expressly authorize manufacturers like MDLZ to make statements about the amount of nutrients (such as whole grains) in their products. *See* 21 C.F.R. § 101.13. Just like a statement that a product has "100 calories" or "5 grams of fat," MDLZ's statement that its Honey Wheat Ritz Crackers contain "5g Whole Grain per 16g Serving" is an express nutrient content claim that the FDA regulations specifically permit. Plaintiff's challenges to this claim are accordingly preempted by federal law, as they seek to hold MDLZ liable under state law for using a labeling claim that federal law specifically authorizes.

Plaintiff cannot circumvent this result by asserting that MDLZ's labeling falsely suggests that Honey Wheat Ritz Crackers are a "good source" of fiber. It is beyond dispute that the front labeling does not reference fiber in any way. And as courts around the country have made clear, the FDA regulation governing the use of the term "good source" only applies when a manufacturer uses specific phrases (such as "good source," "contains," or "provides") on its labeling—not when the labeling simply *implies* that a product is a "good source" of a nutrient. Absent any such statement, Plaintiff's subjective and unreasonable belief that any "whole grain" representation implies the presence of a specific amount of fiber does not amount to a viable claim.

1

Plaintiff's claims are not only preempted, but also implausible. The labeling of Honey Wheat Ritz Crackers does not state, or even suggest, that whole grains are the predominant source of grain in the product. To the contrary, the front label makes clear that whole grains constitute only 5 grams out of every 16 gram serving—or less than a third of the product—and thereby dispels any impression that the crackers consist predominantly of whole grain. This is not a case in which a consumer would need to review the ingredient list to determine that Honey Wheat Ritz Crackers contain more enriched white flour than whole grain wheat flour. Rather, the *front label* makes that fact plain to consumers, which forecloses any plausible claim of deception.

Plaintiff's challenges to the phrase "Honey Wheat" fare no better. That term simply indicates that Honey Wheat Ritz Crackers have a sweeter, more wheat-forward taste than the Original variety of Ritz Crackers and helps consumers differentiate the two products. Despite Plaintiff's claim to the contrary, nothing about this phrase suggests that honey acts as the main sweetener in Honey Wheat Ritz Crackers—or even that it acts as a sweetener as opposed to a flavoring. While Plaintiff claims that the use of honey imparts a darker color that exaggerates the amount of whole grains in the product, no reasonable consumer would draw inferences about the crackers' ingredients based on their color. And as implausible as these allegations are in isolation, they are especially untenable in light of Plaintiff's allegation that consumers believe that "Honey Wheat" is a type of wheat—which is irreconcilable with his allegation that consumers interpret MDLZ's "honey" representations to suggest that honey acts as the primary sweetener.

Leaving aside these core flaws, Plaintiff's ancillary claims for breach of warranty, negligent misrepresentation, common-law fraud, and unjust enrichment all suffer from independent, fatal defects that require their dismissal. And regardless of whether Plaintiff can seek damages on behalf of putative class members, he lacks standing to seek injunctive relief: now that

he is aware that Honey Wheat Ritz Crackers contain more enriched flour than whole grain wheat flour and more sugar than honey, there is no further risk that he will be "deceived." This Court should accordingly dismiss Plaintiff's lawsuit with prejudice and without leave to amend.

## ALLEGATIONS OF THE COMPLAINT

MDLZ manufactures a wide variety of snack foods, including Honey Wheat Ritz Crackers. *See* Compl. ¶ 1. To distinguish Honey Wheat Ritz Crackers from the Original variety of Ritz Crackers, MDLZ sells them in packaging that includes an image of the crackers, the phrase "Honey Wheat," and an image of a honey dipper and a wheat stalk. *Id.* Although the packaging highlights the presence of whole grains, it does not suggest that whole grains comprise the majority of the product. To the contrary, the packaging expressly states that there are "5g Whole Grain per 16g Serving"—less than a third of each serving. *Id.*

Plaintiff does not, and cannot, dispute that Honey Wheat Ritz Crackers contain 5 grams of whole grains per 16 gram serving. He nonetheless claims that the labeling is misleading because it exaggerates the amount of fiber in the product, fails to disclose the relative proportions of whole grains and refined grains, and suggests that the product has more whole grains than it does. *See id.* ¶¶ 3–35. Similarly, while Plaintiff does not dispute that Honey Wheat Ritz Crackers contain honey and taste like honey, he alleges that it is misleading to use the phrase "Honey Wheat," which consumers allegedly believe is a type of wheat that "has more whole grains than regular, refined wheat." *Id.* ¶ 35. Plaintiff alternatively claims that the "honey" representations on the labeling, including the phrase "Honey Wheat," falsely "convey that honey is the primary and/or a significant source of sweetener ingredients," even though Honey Wheat Ritz Crackers are "sweetened primarily with conventional sugars and contain[] a minuscule amount of honey." *Id.* ¶¶ 41–42.

Based on these allegations, Plaintiff asserts claims for: (1) violations of the Illinois

Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, as well as "Violation[s] of State Consumer Fraud Acts"; (2) negligent misrepresentation; (3) breach of express warranty; (4) breach of the implied warranty of merchantability; (5) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; (6) fraud; and (7) unjust enrichment. *See id.* ¶¶ 114–47. He asserts these claims on behalf of a putative class of Illinois consumers and a "Multi-State Class" of Alaska, Arizona, Iowa, Maine, Michigan, Nevada, New Hampshire, North Dakota, Ohio, Oklahoma, Rhode Island, Texas, and Virginia consumers. *See id.* ¶ 106. He seeks several remedies on behalf of the putative class, including damages, restitution, and injunctive relief. *See id.* at 18 (Prayer for Relief).

## ARGUMENT

### I. Plaintiff's Challenges to the "5g Whole Grain per 16g Serving" Claim Are Preempted Because the FDA Regulations Expressly Authorize MDLZ to Make That Claim.

The federal Nutrition Labeling & Education Act ("NLEA") includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law. 21 U.S.C. § 343-1(a). The FDA has explained that the phrase "'[n]ot identical to' does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions" that are "not imposed by or contained in" or that "[d]iffer from those specifically imposed by or contained in" the statute or the FDA's implementing regulations. 21 C.F.R. § 100.1(c)(4).

Put another way, "[s]tates can impose requirements that are *identical to* those imposed by the FDCA, but not *different from* or *more burdensome than* those requirements." *Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021) (citing *Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc.*, 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014)) (emphasis added). Thus, any state-

law claim that seeks to hold manufacturers liable for labeling that complies with the FDA's food labeling regulations is preempted, as any such claim would necessarily impose labeling requirements that are "not identical to the labeling requirements imposed on such products by federal law." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011).

Here, the crux of Plaintiff's lawsuit is that it is misleading for MDLZ to state that Honey Wheat Ritz Crackers have "5g Whole Grains per 16g Serving." But that claim is preempted, as the FDA expressly permits manufacturers to make quantitative claims about the amount of nutrients in their products—such as "100 calories" or "5 grams of fat"—so long as the claim "does not in any way implicitly characterize the level of the nutrient in the food and is not false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). That regulation straightforwardly authorizes MDLZ to claim that Honey Wheat Ritz Crackers contain 5 grams of whole grains per 16 gram serving, as that claim does not characterize the amount of whole grains in the product and is not false or misleading in any way. Indeed, other courts have agreed that virtually identical "'whole grain' per serving" claims are "not actionable on the ground that they are preempted by federal law." *Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1139 (C.D. Cal. 2010).[1]

Plaintiff attempts to circumvent this result by alleging that the "5g Whole Grain per 16g Serving" claim falsely exaggerates the amount of fiber in the product and suggests that Honey Wheat Ritz Crackers are a "good source" of fiber, even though the crackers do not provide 10% or more of the recommended daily intake of fiber per serving. *See* Compl. ¶¶ 8–21. But that

---

[1] Many other courts have held that federal law preempts similar claims that a product contains a specific amount of a given nutrient. *See, e.g.*, *Nacarino v. Kashi Co.*, --- F. Supp. 3d ----, 2022 WL 390815, at *3–4 (N.D. Cal. Feb. 9, 2022) (holding that federal law preempted claim that protein claims like "11g Protein" falsely exaggerated the quality and digestibility of the protein); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1122–23 (N.D. Cal. 2013) (holding that federal law preempted false advertising claim alleging that calorie-content representations falsely suggested that a 2000-calorie diet was appropriate for all consumers).

theory is entirely implausible, as the front label of Honey Wheat Ritz Crackers does not even *mention* fiber. Moreover, the FDA regulation governing "good source" claims, 21 C.F.R. § 101.54, "applies only to the use of the *words* 'good source,' 'contains,' or 'provides'—none of which is present here." *Coe v. Gen. Mills, Inc.*, No. 15-5112, 2016 WL 4208287, at *4 (N.D. Cal. Aug. 10, 2016) (emphasis added) (citation omitted) (dismissing lawsuit alleging that the product name "Cheerios Protein" falsely implied that the cereal was a "good source" of protein). And for that reason, courts have held that labeling claims that do not include the terms "good source" or "fiber" do not amount to a representation that a product is a "good source of fiber." *See McMorrow v. Mondelēz Int'l, Inc.*, No. 17-2327, 2018 WL 5024840, at *3 (S.D. Cal. Oct. 17, 2018) (holding that claims about "wholesome grains" did not constitute a representation that the defendant's biscuits were "high" in fiber, as "[t]he Products do not even advertise that they contain any fiber").

Here too, absent any use of the terms "good source" or "fiber," Plaintiff cannot plausibly allege that MDLZ's labeling represents that Honey Wheat Ritz Crackers are a "good source of fiber." Moreover, even if one looked past his mistaken attempt to apply the FDA's "good source" regulations, Plaintiff has not plausibly alleged that MDLZ's front label—which does not reference fiber in any way—exaggerates the amount of fiber in the product. *See infra* § II.A. Absent any representation about the amount of fiber, Plaintiff's unwarranted inferences about the presence of fiber in Honey Wheat Ritz Crackers do not render its "whole grain" claims misleading.

## II.    Plaintiff Has Not Plausibly Alleged That MDLZ's Labeling Is Misleading.

Even if this Court concluded that Plaintiff's lawsuit were not preempted by federal law, Plaintiff has not "plausibly alleged that a reasonable consumer" would be deceived by the labeling of Honey Wheat Ritz Crackers. *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 754 (N.D. Ill. 2015); *see also Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) ("Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception."). This standard

requires Plaintiff to establish "not just the mere possibility of fraud, but that fraud is a '*necessary or probable inference* from the facts alleged.'" *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (quoting *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992)) (emphasis in original). And because the "reasonable consumer" standard does not hinge on the subjective views of any given consumer, this Court may "dismiss the complaint if the challenged statement[s]" are "not misleading as a matter of law." *Ibarrola*, 83 F. Supp. 3d at 756.

Here, Plaintiff challenges two sets of labeling claims: (1) MDLZ's "whole grain" representations, including the statement "5g Whole Grain per 16g Serving" and an image of a stalk of wheat; and (2) MDLZ's use of the phrase "Honey Wheat." Plaintiff has not plausibly alleged that either set of labeling claims is likely to deceive a reasonable consumer.

### A. The "whole grain" claims do not suggest that Honey Wheat Ritz Crackers are made primarily of whole grains or that they are a "good source" of fiber.

Plaintiff's primary theory of deception is that MDLZ's "whole grain" representations—including "5g Whole Grain per 16g Serving" and an image of a stalk of wheat—falsely suggest that the crackers are comprised primarily of whole grains and exaggerate the amount of fiber in the product. *See generally* Compl. ¶¶ 3–35. But this theory is implausible, as the labeling expressly states that there are only 5 grams of whole grains per 16 gram serving—or, in other words, that whole grains comprise less than a third of the product. *See* Compl. ¶ 1. Given that prominent front-label disclosure, no reasonable consumer could conclude that Honey Wheat Ritz Crackers consist primarily of whole grains. *See, e.g.*, *Chiappetta v. Kellogg Sales Co.*, No. 21-3545, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022) ("Courts considering deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used.") (citation and internal quotation marks omitted); *Trujillo*

*v. Apple Computer, Inc.*, 581 F. Supp. 2d 935, 938 (N.D. Ill. 2008) ("If other information disclosed or available to the consumer dispels any tendency to deceive, there is no deception.").

Plaintiff will likely rely on the Second Circuit's decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), but that case is distinguishable.[2] There, the Second Circuit concluded that the plaintiffs had plausibly alleged that the claims "Whole Grain," "Made with Whole Grain," and "Made with 5G [or 8G] Whole Grain per Serving" were "misleading because they communicate to the reasonable consumer that the grain in the product is predominantly, if not entirely, *whole* grain." *Id.* at 637. While the court noted that the labeling "set forth accurately the *amount* of whole grain in the crackers per serving," it credited the plaintiffs' allegations that these statements were "nonetheless misleading because . . . the grain component consisting of enriched white flour substantially exceeds the whole grain portion." *Id.* But here, in contrast to *Mantikas*, the front of the package clarifies not only the amount of whole grains per serving ("5g Whole Grain") but also the amount of whole grains relative to the total serving size ("5g Whole Grain per 16g Serving"). *See* Compl. ¶ 1. Given that prominent front-label disclosure, no reasonable consumer would conclude that Honey Wheat Ritz Crackers consist primarily of whole grains.

Moreover, to the extent Plaintiff claims that the "whole grain" representations exaggerate the amount of fiber in Honey Wheat Ritz Crackers, that theory fails because the front label says nothing about the amount of fiber in the crackers. It is axiomatic that "a statement or label cannot mislead unless it actually conveys untrue information about a product." *Floyd v. Pepperidge Farm, Inc.*, --- F. Supp. 3d ----, 2022 WL 203071, at *4 (S.D. Ill. 2022). And consistent with that

---

[2] Notably, in reversing the dismissal of the plaintiffs' lawsuit in *Mantikas*, the Second Circuit expressly declined to determine whether their theory of deception was preempted by federal law, as the district court had not reached that issue. *See* 910 F.3d at 639 n.2. But because the "5g Whole Grain per 16g Serving" claim is expressly authorized by federal law, this Court need not decide whether Plaintiff has plausibly alleged that it is misleading. *See supra* § I.

principle, courts have repeatedly dismissed lawsuits alleging "that a consumer will read a true statement on a package and will then . . . assume things about the products *other than* what the statement actually says."[3]  *Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012).  Here too, absent any representation about the amount of fiber in Honey Wheat Ritz Crackers, Plaintiff cannot plausibly allege that the labeling exaggerates the amount of fiber.

### B.    The use of the phrase "Honey Wheat" is not deceptive.

In addition to challenging MDLZ's "whole grain" representations, Plaintiff also alleges that the phrase "Honey Wheat" is deceptive because it falsely suggests that Honey Wheat Ritz Crackers are predominantly sweetened with honey, even though it is "sweetened primarily with conventional sugars and contains a miniscule amount of honey."  Compl. ¶ 42.  But this phrase simply highlights the sweeter, wheat-forward taste of Honey Wheat Ritz Crackers.  And just as the term "vanilla" would help a consumer differentiate a pint of vanilla ice cream from a pint of chocolate ice cream or strawberry sorbet, the term "Honey Wheat" assists consumers in differentiating between MDLZ's many varieties of Ritz Crackers, including Original, Garlic & Butter, Roasted Vegetable, and many others.  *See Steele v. Wegmans Food Mkts.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("The buyer's first desire is for ice cream, and when he is in the frozen food area he must select[] from many choices (chocolate, lemon, mint, lime, etc.) the one he wants.

---

[3] *See also, e.g.*, *Solak v. Hain Celestial Grp., Inc.*, No. 17-704, 2018 WL 1870474, at *6–7 (N.D.N.Y. Apr. 17, 2018) (dismissing lawsuit alleging that defendant suggested that its Garden Veggie Straws "contain the same nutritional content as the vegetables from which they are derived" and noting that the labeling "make[s] no explicit claims as to the objective or relative nutritional value of the Straws whatsoever"); *Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. 17-1875, 2017 WL 4286577, at *1 (C.D. Cal. Sept. 20, 2017) (dismissing lawsuit alleging that statements "Made with Real Fruit" and "Made with Real Fruit & Vegetable Juice" falsely suggested that fruit snacks were "nutritious and healthful"); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1091 (N.D. Cal. 2014) ("It is utterly implausible that Plaintiffs or reasonable consumers would see an undisputedly true statement about fat and then draw conclusions about other totally unrelated nutritional characteristics . . . .").

Thus the large-type 'Vanilla' is of immediate use.").[4]

Viewed in that context, it is implausible that a reasonable consumer would conclude that the phrase "Honey Wheat" suggests that honey acts as the primary sweetener. That is particularly true because the labeling does not claim that the crackers contain a specific amount of honey or that honey acts as the predominant sweetener in the product. Absent any such representation, "the label's use of the word 'honey' by itself merely represents that the Product is honey flavored, not that honey is an ingredient—much less, the predominant sweetening ingredient."[5] *Warren v. Stop & Shop Supermarket, LLC*, No, 20-8718, 2022 WL 815300, at *5 (S.D.N.Y. Mar. 16, 2022) (dismissing claim that the use of the term "honey" on graham cracker labeling was misleading).

Here, as in *Warren*, *Lima*, and *Kennedy*, there is no dispute that Honey Wheat Ritz Crackers contain honey. Nor does the labeling include any specific claims about the *amount* of honey they contain. In the absence of any "unambiguous representation" about the amount of honey in the crackers (*Lima*, 2019 WL 3802885, at *7), Plaintiff cannot plausibly allege that MDLZ's "honey" representations exaggerate the amount of honey or that they are misleading in any way.[6]

---

[4] *Steele* is hardly an outlier. To the contrary, countless courts in Illinois and elsewhere have dismissed virtually identical cases filed by Plaintiff's counsel challenging similar "vanilla" representations. *See generally Zahora v. Orgain LLC*, No. 21-705, 2021 WL 5140504, at *4-5 (N.D. Ill. Nov. 4, 2021) (holding that "Vanilla Bean Flavor" representation on protein shake was not misleading and compiling cases dismissing similar lawsuits filed by Plaintiff's counsel).

[5] *See also, e.g.*, *Lima v. Post Consumer Brands, LLC*, No. 18-12100, 2019 WL 3802885, at *1, *7 (D. Mass. Aug. 13, 2019) (dismissing lawsuit alleging that Post misled consumers into believing that its Honey Bunches of Oats cereal "was primarily sweetened with honey" and emphasizing that "the packaging . . . makes no objective representation about the amount of honey"); *Kennedy v. Mondelēz Global LLC*, No. 19-302, 2020 WL 4006197, at *12 (E.D.N.Y. July 10, 2020) (dismissing lawsuit challenging statements "Made with Real Honey" and "Honey Maid" as used on graham crackers, as these statements were "factually true" and "provide no basis for a reasonable consumer to make any of the inferences that Plaintiffs allege are misleading").

[6] Plaintiff's allegation that MDLZ misrepresents the amount of honey in Honey Wheat Ritz Crackers is especially implausible in light of his allegation that consumers believe that "Honey

Finally, Plaintiff alleges in passing that MDLZ uses honey to "impart a darker color," which "contributes to consumers getting the misleading impression the Product contains more whole grains than it does." Compl. ¶¶ 37, 40. But even if Plaintiff were correct that the use of honey alters the color of Honey Wheat Ritz Crackers, courts throughout the country have made clear that reasonable consumers would not draw inferences about a product's *ingredients* from its *color*. *See, e.g.*, *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 17 (N.D. Cal. 2020) (dismissing lawsuit alleging that coloration of white baking chips misled consumers into believing they were made of white chocolate); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 336–37 (E.D.N.Y. 2018) (granting motion to dismiss and rejecting allegation that red coloration of juice blend implied that beets were the predominant ingredient in the product). Here too, Plaintiff cannot plausibly allege that the darker color of Honey Wheat Ritz Crackers falsely exaggerated the amount of whole grains in the product, and this Court should reject this theory of deception.

## III. Plaintiff Has Not Stated a Plausible Breach-of-Warranty Claim.

In addition to his consumer fraud claims, Plaintiff also asserts a claim for "Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose, and Magnuson Moss Warranty Act." *See* Compl. ¶¶ 126–138. When a plaintiff asserts a breach-of-warranty claim premised on alleged mislabeling, that claim necessarily fails if the plaintiff cannot establish that the defendant's advertising was likely to deceive a reasonable consumer. *See, e.g.*, *Spector*, 178 F. Supp. 3d at 674. Because Plaintiff has not plausibly alleged that MDLZ's labeling

---

Wheat" is a "type of wheat" that "has more whole grains than regular, refined wheat." Compl. ¶ 35. It is not possible that the phrase "Honey Wheat" refers to a "type of wheat" and that it simultaneously suggests to consumers that Honey Wheat Ritz Crackers are sweetened primarily with honey. The inconsistency between these two theories of deception renders Plaintiff's allegations implausible and fatally flawed. *See generally Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) ("[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.").

is deceptive, his breach-of-warranty claims fail as well. And because "a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim," Plaintiff's failure to allege a plausible breach-of-warranty claim also defeats his MMWA claim. *Scheisser v. Ford Motor Co.*, No. 16-730, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016).

Plaintiff's breach of warranty claims also fail for lack of privity. "[U]nder Illinois law," Plaintiff "must prove privity of contract before he can recover economic damages for breaches of express and implied warranty claims." *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 740 (N.D. Ill. 2015) (citing *N. Ins. Co. of N.Y. v. Silverton Marine Corp.*, No. 10-345, 2010 WL 2574225, at *2–3 (N.D. Ill. June 23, 2010)); *see also Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1125 (N.D. Ill. 2019) ("[A] claim for breach of express warranty, like a claim for breach of implied warranty, requires privity of contract."). Here, Plaintiff alleges that he purchased Honey Wheat Ritz Crackers at "stores including Walmart." Compl. ¶ 97. That precludes him from establishing that he was in privity with MDLZ, which is fatal to his breach-of-warranty claims.

## IV.  Plaintiff's Remaining Common-Law Claims Are Also Fatally Defective.

Plaintiff also asserts tag-along claims for negligent misrepresentation, common-law fraud, and unjust enrichment. *See* Compl. ¶¶ 139–147. Absent any plausible claim that MDLZ's labeling is deceptive or that it materially misled Plaintiff, these claims necessarily fail as well. And in any event, all three claims fail for separate and independent reasons.

Negligent Misrepresentation.  In Illinois, "[t]he economic loss rule generally prohibits recovery in tort for solely economic loss." *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 824 (N.D. Ill. 2016) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982)). Here, Plaintiff does not allege any personal injury or property damage; instead, his alleged losses consist of the money he spent on Honey Wheat Ritz Crackers. *See* Compl. ¶ 143 ("Plaintiff and class members would not have purchased the Product

12

or paid as much if the true facts had been known, suffering damages."). Even if Plaintiff were correct that MDLZ misrepresented the ingredients in Honey Wheat Ritz Crackers, he can only recover in contract—not in tort. *See Moorman*, 435 N.E.2d at 450 ("The remedy for economic loss, loss relating to a purchaser's disappointed expectations . . . lies in contract."); *Manley*, 417 F. Supp. 3d at 1120–21 (applying *Moorman* to dismiss negligent misrepresentation claim).

Common-Law Fraud. Under Illinois law, a claim for common-law fraud requires Plaintiff to establish not only that MDLZ "intentionally made a false statement of material fact," but also that "the statement was made for the purpose of inducing reliance thereon." *Ollivier v. Alden*, 634 N.E.2d 418, 424 (Ill. Ct. App. 1994). In other words, scienter "is an essential element of common-law fraud." *Id.* And it is not sufficient to establish that MDLZ's conduct *might* constitute fraud; instead, Plaintiff must establish that "fraud is the necessary or probable inference" from the facts alleged in the complaint. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996).

Plaintiff has not come close to doing so here. While Plaintiff alleges that MDLZ "sold more of the Product and at higher prices than it would have in the absence of the" challenged labeling representations (Compl. ¶ 74), this does not establish fraudulent intent. To the contrary, courts have made clear that a defendant's alleged desire to increase profits and sales cannot establish scienter, as these are "basic motivations not only of fraud, but of running a successful corporation." *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005). And while Plaintiff alleges that MDLZ's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations" (Compl. ¶ 146), this circular allegation does not substantiate Plaintiff's unsupported assertion that MDLZ *intended* to mislead consumers.

Unjust Enrichment. Finally, Plaintiff asserts a claim for unjust enrichment, which alleges—in a single sentence—that "Defendant obtained benefits and monies because the Product

was not as represented and expected, to the detriment and impoverishment of plaintiff and class members . . . ." Compl. ¶ 147. But as the Seventh Circuit has made clear, any such claim "will stand or fall" with Plaintiff's other claims of fraud. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent *claim* of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well"). Because Plaintiff cannot state a plausible consumer fraud claim, his unjust enrichment claim must also fail.

**V.      This Court Should Dismiss Plaintiff's Claim for Injunctive Relief.**

Finally, even if his claims were sufficiently plausible to survive dismissal (they are not), Plaintiff lacks standing to seek injunctive relief. As a general rule, "a plaintiff who is aware of a defendant's deceptive practices is not likely to be harmed by them in the future, and therefore lacks standing to pursue injunctive relief." *Benson v. Fannie May Confections Brands, Inc.*, No. 17-3519, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014)); *see also Mednick v. Precor, Inc.*, No. 14-3624, 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016) (collecting cases). Plaintiff alleges that, had he known of MDLZ's purported deception, he "would not have purchased the Product" or "would have paid less for it." Compl. ¶ 101. But since Plaintiff "is now aware" of MDLZ's sales practices, he "is not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741.

The fact that Plaintiff purports to represent a putative class of consumers who purchased Honey Wheat Ritz Crackers does not change this result. The Seventh Circuit has made clear that "[s]tanding cannot be acquired through the back door of a class action" and that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002). Rather, the "named plaintiffs who represent a class 'must allege

14

and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Thus, even if other class members may not know that Honey Wheat Ritz Crackers contain more enriched white flour than whole grains, or that they contain more sugar than honey, the "risk of future harm to proposed class members" is not enough to confer Plaintiff with Article III standing. *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 857 (N.D. Ill. 2021); *see also Mednick*, 2016 WL 5390955, at *9 (noting that "the named Plaintiffs 'cannot rely on the prospect that *other* consumers may be deceived' to boost their own standing") (emphasis in original).

Plaintiff's allegation that he "intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities and/or composition" (Compl. ¶ 104) is similarly unavailing. This statement does not establish that Plaintiff faces a risk of future injury; to the contrary, it establishes that he will *not* purchase Honey Wheat Ritz Crackers so long as their ingredients and labeling are unchanged, which makes clear that there is no risk of future harm. In other words, the possibility that Plaintiff and other class members "may, one day, become . . . customers once more" is not sufficient to establish standing. *McNair v. Synapse Grp, Inc.*, 672 F.3d 213, 224–25 (3d Cir. 2012); *see also, e.g.*, *Holve v. McCormick & Co.*, 334 F. Supp. 3d 535, 552 (W.D.N.Y. 2018) (holding the plaintiff's allegation that "she 'would purchase the Product again if it was not misbranded'" did not establish standing).

## **CONCLUSION**

MDLZ respectfully requests that the Court dismiss Plaintiff's lawsuit with prejudice.

Dated:  April 7, 2022

Respectfully submitted,

By:  /s/ Dean N. Panos
       Dean N. Panos (ARDC No. 6203600)
       JENNER & BLOCK LLP
       353 N. Clark Street
       Chicago, IL 60654-3456
       Telephone:  (312) 923-2765
       Facsimile:  (312) 527-0484
       dpanos@jenner.com

       Attorneys for Defendant
       Mondelēz Global LLC

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing document was filed on April 7, 2022 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  April 7, 2022                              By: _____/s/ Dean N. Panos_____
                                                                          Dean N. Panos